at all, numbers 16-2436 and 3796. Mr. Aptin and Mr. Goldberger. Take your time setting up. Whenever you're ready. Good morning judges. May it please the court. My name is Adam Aptin. I represent the lead plaintiff Ryan Fain in the class action currently before the court. I would like to reserve six minutes for rebuttal, if that's okay. Your Honor, the accounts that were improperly reported, they amounted to what percentage of earnings? Your Honor, it actually, the amounts that were reported improperly resulted in a one cent difference in earnings per share for the year, as well as completely reversed the gain for the fourth quarter, turned it into a loss. It was $270,000 after tax charge. Was there any other history of improper reporting? Not to my knowledge, Your Honor. While that number might seem small at first blush, it was significant. Upon the release of this news, the stock dropped 15%. This was serious within the context of this company. And did it bounce back? Your Honor, I'm not sure what the company has done since then. Did the stock bounce back? Your Honor, to my knowledge, the stock has recovered slightly, but that was a ways away after the initial drop. And to that point, Your Honor, investors sold their stock after this news came out. So if the stock did recover, they were not around to enjoy the recovery. Didn't the company almost immediately issue a statement as it were, acknowledging a mistake was made? Yes, Your Honor. They couched it as a mistake. What we allege in our complaint is that this was more than a mistake. This was fraudulent conduct. So you think that satisfies the telebus standard? Well, Your Honor, what we did was after our dismissal in April of 2016, we asked for leave to amend. And I think this appeal is really focused on that request, the leave to amend, and specifically the motion for relief from the judge's final order. At that point in time, already had you not? I'm sorry? You already amended at that time? So Your Honor, given the PSLRA, the Private Securities Litigation Reform Act of 1995, our client was not a party in the case until he was appointed lead plaintiff. The amended complaint that was dismissed in April of 2016 was the first pleading that he and my firm had authored. Four months later... So you're trying to amend a second time, whether it counts or not, and you don't attach the proposed amended complaint, which seems to be required, is it not? Your Honor, we asked for leave to amend at the hearing in April of 2016. At that point in time, the lower court judge asked, what additional facts would you include if you were to be given leave to amend? I proposed several additional facts, one including an allegation as to motive. After that motion was denied, my investigation continued. Four months later, I submitted a complaint in support of my motion for relief under Rule 60. It was that complaint that I believe is what should be allowed to proceed to discovery court. So the information that you used, when was it available publicly? I guess the district court had big issues, right? Yes, that's an issue that's pretty prevalent. In May of 2016, two and a half weeks after the judge's dismissal order, an amended pleading was filed. This amended pleading contained facts for the first time... This is in the universal case? This is in the universal case, yes, Your Honor. Universal case was pending for about a year before you filed your amended complaint? Yes, Your Honor. There was an initial complaint, which contained some allegations of fraud, in very general allegations. Then there was an amended complaint, which removed those allegations. Then a second amended complaint, which is the one that was filed in May of 2016, that I looked at. From that second amended complaint, I obtained additional information relating to the fraudulent conduct. It didn't relate to the bad debt, or how they were treated with bad debts. Well, Your Honor, that's a good point, because that goes to the actual ability of the proposed second amended complaint, my proposed second amended complaint, to stay in claim for securities fraud under Rule 10b-5, specifically loss causation, which I will get to in just a moment, Your Honor. After the May 2016 universal second amended complaint came out, the allegations in that complaint prompted my investigation. I renewed my investigation. I interviewed additional witnesses, which yielded additional information, specifically relating to the defendant's artificial inflation of connections, quote-unquote, specifically asking customers to install duplicate readers where duplicate readers were not necessary. From there, I put together a second amended complaint. I submitted it in support of my motion for a relief under Rule 60. The judge denied that motion. I filed a second appeal. One of the issues, Your Honor, right now is whether or not this proposed second amended complaint would be futile, whether relief to mention even be granted. I submit that it would not be futile, because the proposed second amended complaint pleads each of the required elements for a Rule 10b-5 claim, specifically loss causation. And to answer your question, Your Honor, the duplicate accounts, the accounts that were obtained under false pretenses, specifically USA Technologies claiming it could provide aggregation services, these accounts led to cancellations, cancellations that were not a surprise, and it was these cancellations that resulted in the bad debt expense in the restatement. So, Your Honor, I would submit that under the case law relating to loss causation, being that it can be pleaded under Rule 8, notice pleading, and given that I have alleged in my complaint a materialization of the risk theory, I would submit that the proposed second amended complaint sufficiently pleads all the required elements for a 10b-5 claim. All right. We'll get you back on rebuttal. Thank you, Your Honor. Mr. Goldberger. May it please the Court. My name is Norman Goldberger, and I represent USA Technologies, the appellees, in this case, before you. Do you know why the accounts received, or do you have any inklings as to why the accounts        Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.    Then, did you have any certain statements that I didn't hear coming in that what happened here was some of these accounts never generated any revenue coming in from the other side? And so what happened was these were kept in accounts payable as if they were going to get money for the rental fees that were due, and they never did. They were very small amounts, and so they were kept in accounts payable as a contrabalance account because there was money in and money out, and that's what happened. The problem is, I mean, one could make an argument that it begins to look rather peculiar if all the small balance accounts are misreported as if somehow those insignificant accounts won't be noticed. No, I don't think it's all the small balance accounts. I think it was some of the small balance accounts that were there, and I don't think there's any allegation that it was all the small balance accounts. To be precise, the restatement was $450,000, as my colleague has said. It resulted in $270,000 in earnings, and we're talking about $58 million in revenue. So it really is a very small amount compared to the $58 million in revenue, and to just address the original complaint briefly because my colleague seems to have abandoned the original complaint to some degree, there's nothing in these accounts or anything about this that would suggest conscious disregard. First, he doesn't allege motive and opportunity, and secondly, there's nothing that suggests conscious disregard. Ever since Ernst & Ernst, negligence has not been the standard. Accounting mistakes are not the standard. So merely alleging that there may have been a gap violation or even a correction is not enough to allege center. I think my colleague recognizes that, and that is why he goes to his proposed amended complaint. The problem is the proposed amended complaint fares no better. To begin with, the proposed amended complaint was late. There is nothing in the third amended complaint in the universal case that added anything to the knowledge of the plaintiff. The one proposition that he points to is that there is an alleged memorandum from a vice president to the company president, and the company president asked the vice president to change that memorandum. That adds nothing, as the court below suggested. The universal complaint itself said from the beginning that these connections that my colleague talks about were designed to fool the investors and fool the shareholders. That was in the original universal complaint. That should have put plaintiff on notice that he needed to investigate that universal complaint. Moreover, my colleague says that his proposed amended complaint would meet the standard under the PSLRA. No, it would not. He talks about witnesses. There is nothing in the proposed amended complaint about witnesses. The only place you hear about witnesses is in his brief. He never alleged who these witnesses are. He never even alleged that there were witnesses. In the proposed amended complaint, the only thing that he relies upon are public records and the internet. That is in his proposed amended complaint. There is nothing in the proposed amended complaint that suggests that confidential witnesses told him anything. Moreover, the universal complaint, which is clearly what he relies on and which they have been candid about, itself relies on information and belief. Therefore, if he is relying on the universal complaint, the proposed amended complaint itself relies on information and belief. Under the PSLRA, as your honors are aware, one must describe what the basis of the information and belief is and what the source of the information and belief is. You can't find it anywhere in the complaint. There is this bare allegation that connections in some way relate to these charge-offs. There is no source for that. No witness has said that. No one has talked about that. There is no connection to that. It doesn't exist. Nowhere in the complaint, the proposed amended complaint, did they ever connect, to use the term, these connections to the bad debt expense, nor did they have a source for doing so. So when you take all of that into consideration, the court below's decision to not grant the amendment makes perfect sense and should not have been granted. Let me just address boss causation for a moment. The issue of connections, which my colleague raised, was raised in 2014. According to the complaint itself, in 2014, these connections were terminated. So the impact on the company happened in 2014. This change in accounting principles happened in 2015, as we know. So how can there be loss causation for accounts that were quickly terminated, imminently terminated, according to the complaint, in 2014, in 2015? It makes no sense. Are we to make anything of the fact that the universal action was settled? Your Honor, I think the important point is that the universal action was settled with a payment to my client. That in and of itself would tend to undermine any of the information and belief allegations that would have been in the universal complaint, even if you could give them some credence, although they don't state what the information and belief that they relied upon is. So there's nothing to support any of the allegations in the proposed amendment complaint. They're bare allegations. They are what, in the old days, would have been called fraud by hindsight. Something went wrong. It must have been fraudulent. That's what it amounts to. Your Honor, do you have any other questions? No further questions. Thank you. Your Honors, thank you for hearing the rebuttal. Just to clarify a few quick comments. This case is not about the change in accounting principle. This case is about conduct that occurred internally, inside the boardrooms, that resulted in artificial connections. Connections were what this company used to give investors insight into their progress as a company. Defendants were asking customers to install multiple readers, which would have resulted in... I thought this case was about how they were treating their bad debt, or the fact they didn't report their bad debt. Well, Your Honor... It's the same case. No, it's the same case, because it was these duplicate readers, these false connections that resulted in these small account cancellations. Was there anything in the original complaint that dealt with connections? Your Honor, the original complaint, the complaint that was dismissed in April of 2016, did not include that information, because I was not aware of that information at that time. It was publicly available. You do consider it was publicly available? No, I do not, Your Honor. Okay. I do not. It was the universal complaint in May 2016 that provided information about former customers that I'd been contacted in my investigation and found out material about these duplicative readers and the other information that I identified in my brief. Specifically, we're talking about not just the internal memorandum about the aggregation services, but specifically that Defendant D'Amedio was asking customers to install duplicate readers, for example, taxicabs, where duplicate readers, they're not needed. Only one reader is needed at that point in service location. So in the aggregation services that were promised and accounts received on that basis, and between the accounts that were given duplicate readers, there were a number of small accounts that were canceled, which resulted in this restatement, in this announcement that they had to write off $450,000 worth of small uncollectible accounts. Your Honor, to your question about whether it matters that the universal complaint was settled, I would submit no, it is not. And none of the outside materials that my colleagues submitted in opposition to the Rule 60 motion matter for that point. This is a 12B6 motion. And all these outside materials either go to the credibility of the witnesses who identify, or I don't know, ancillary matters that for some reason counsel thought were relevant or would kind of shift the winds in their favor. None of that stuff is relevant for this case. It's strictly what's in the complaint. I would submit the proposed second amendment of the complaint, and whether that in and of itself can state a claim for securities fraud under Rule 10B5. Thank you, Your Honor. Thank you. Thank you to both counsel for being with us today, and we'll take the matter under adjournment.